FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

4.19.2023

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:23-cr-68-TJC-MCR

DECONNA BURKE                               18 U.S.C. § 1343

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (WIRE FRAUD)

#### A. Introduction

At all times relevant to this Indictment:

1. The defendant resided in the Middle District of Florida.

2. Prestamos Community Development Financial Institution ("Prestamos") was a lending service that among other services assisted businesses in accessing the Small Business Administration Paycheck Protection Program. Prestamos worked with Blue Acorn to access the Small Business Administration Paycheck Protection Program.

3. Blue Acorn was a financial services company that among other services worked with companies to include Prestamos to assist businesses in accessing the Small Business Administration Paycheck Protection Program.

4. Blue Acorn utilized computer servers / data centers outside of the state of Florida, as part of conducting nationwide business operations.

**The Small Business Administration**

5. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

6. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

**The Paycheck Protection Program**

7. One of the new programs was the SBA Paycheck Protection Program ("PPP"), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA could forgive all or part of loans, if employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for certain qualifying business expenses (i.e., payroll, rent, mortgage interest, or utilities). The PPP forgiveness process required the applicant

to electronically submit a PPP Loan Forgiveness Application Form, a SBA Form 3508S.

8. The PPP application process required interested applicants to electronically submit a Borrower Application Form, a SBA Form 2483. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

9. Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, to include any documents intended to verify the applicant's payroll expenses. The applicant was required to certify an understanding that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law and subject to criminal penalties.

### B. The Scheme and Artifice

10. Beginning on an unknown date, but no later than in or around April 2021, and continuing through at least in or around November 2021, in the Middle District of Florida and elsewhere, the defendant,

DECONNA BURKE,

knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme and Artifice

11. The manner and means by which the defendant sought to accomplish the scheme to defraud included, among others, the following:

    a. It was part of the scheme and artifice that the defendant would and did fraudulently complete an IRS Form 1040, Schedule C, "Profit or Loss From Business" for purposes of applying for a PPP loan to which he was not entitled;

    b. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed the principal business or profession as "Babysitting";

  c. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed under "Part I Income" gross receipts or sales for his business as $98,000;

  d. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $500 in supply expenses;

  e. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $200 in advertising expenses;

  f. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $1000 in car and truck expenses;

  g. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $200 in office expenses;

  h. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $500 in utilities expenses;

i. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business $300 in commissions and fees;

j. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for his business a net profit of $95,300;

k. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to fund a PPP loan for his purported business, the defendant would and did submit, a false and fraudulent loan application that included multiple materially false and fraudulent representations and pretenses, such as:

i. stating a business gross income of $98,000 and that current economic uncertainty made the loan request necessary to support the ongoing operations of the defendant;

ii. certifying that the business was in operation on February 15, 2020;

iii. certifying that the funds would be used to maintain payroll;

iv. certifying the truth of the statements in the application; and

6

v. including fraudulent supporting documentation, that is, a fraudulently completed IRS Form 1040, Schedule C, "Profit or Loss From Business."

l. It was further a part of the scheme and artifice that the defendant would and did provide financial institution account information into which the fraudulently-obtained PPP funds would be transferred via a ACH payment / wire transfer;

m. It was further a part of the scheme and artifice that the defendant would and did cause a SBA Participating Lender through their bank to send PPP loan proceeds via a ACH payment / wire transfer to the defendant's bank account at Navy Federal Credit Union;

n. It was further a part of the scheme and artifice that the defendant would and did retain fraud proceeds for the defendant's personal enrichment and entertainment to include among other things, paying off a loan with Navy Federal Credit Union for a motorcycle;

o. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to forgive the aforementioned PPP loan for his purported business, the defendant would and did submit, a false and fraudulent PPP Loan Forgiveness Application, a SBA Form 3508S that

included multiple materially false and fraudulent representations and pretenses, such as:

      i.      stating that the amount of the loan spent on payroll costs was $20,415;

      ii.      certifying that he used the PPP loan proceeds for eligible uses; and

      iii.      certifying the truth of the statements in the loan forgiveness application.

      p.      It was further a part of scheme and artifice that the defendant would and did perform acts, and make statements to promote and achieve the object of the scheme and artifice and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the scheme and artifice and the acts committed in furtherance thereof.

### D. Execution of the Scheme and Artifice

12.    On or about April 29, 2021, in the Middle District of Florida and elsewhere, the defendant,

DECONNA BURKE,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire, radio, or television

communication in interstate and foreign commerce, certain writings, signals, signs, pictures, and sounds, that is, the on-line electronic submission of a PPP Loan Application in the amount of $20,415.00, to Blue Acorn.

In violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, approximately $20,415, which represents the proceeds that defendant obtained as a result of the violation.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

███████████████████

Foreperson

ROGER B. HANDBERG
United States Attorney

By: *Kevin C. Frein*
Kevin C. Frein
Assistant United States Attorney

By: *Kelly S. Karase*
Kelly Karase
Assistant United States Attorney
Deputy Chief, Jacksonville Division

FORM OBD-34
4/18/23 Revised

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Jacksonville Division

THE UNITED STATES OF AMERICA

vs.

DECONNA BURKE

## INDICTMENT

Violations: 18 U.S.C. § 1343

A true bill,



_____
Foreperson

Filed in open court this 19th day of April, 2023.

_____
Clerk

Bail  $_____

GPO 863 525